UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| VICTOR A. TAVARES, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 18-606MSM |
| | : | |
| LIEUTENANT MACOMBER, | : | |
| C.O. SPADONI, C.O. ANTONELLI, | : | |
| C.O. SANTA-GATA, LIEUTENANT | : | |
| DIVINE, DEPUTY WARDEN MOORE, | : | |
| and WARDEN ACETO, | : | |
|     Defendants. | : | |

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court are a twinned[1] set of motions to dismiss the Second Amended Complaint[2] ("SAC") of Plaintiff Victor A. Tavares, a *pro se* prisoner incarcerated at Rhode Island's Adult Correctional Institutions ("ACI"). ECF Nos. 47, 53. Defendants, all officials of Rhode Island Department of Corrections ("RIDOC"), sued individually and in their official capacities, contend that Plaintiff's pleading fails to state a claim in that he has not set forth any conduct or omission by any of them that rises to the level of a constitutional violation. They ask the Court to dismiss the case with prejudice. The motions have been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, I recommend that the motions

---

[1] The first of the two motions to dismiss was filed on June 18, 2019, before Plaintiff had served any of the Defendants in their official capacities, except Lieutenant Macomber who had been served both individually and in his official capacity. After service was accomplished, the second motion was filed to establish that the newly served Defendants joined the first motion, as well as to withdraw the argument asking that they be dismissed based on the lack of service.

[2] Pursuant to the Court's Text Order of April 19, 2019, Plaintiff's SAC (ECF No. 24) was deemed to be the operative pleading. Plaintiff's subsequent attempt to supplement the SAC was denied, leaving the SAC as the pleading to which the motions to dismiss are directed.

be granted unless Plaintiff is able to file a timely amendment that cures the identified deficiencies.

I.    BACKGROUND

The claims in Plaintiff's SAC are brought pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1986, based on alleged violations of the Eighth Amendment of the United States Constitution. U.S. Const. amend. VIII. The SAC is focused on three matters.

First, Plaintiff is upset by RIDOC's handling of his "court clothes," described in the SAC as a three piece gray suit and white button-up shirt, and by the discipline imposed as a result of Plaintiff's arguing with the officer who told him the clothes were to be destroyed. ECF No. 24 ¶¶ 9-12, 18, 21, 23-24. Second, he complains of RIDOC officials' failure to prevent the fight involving him and another inmate and their use of "riot spray" to break up the fight, followed by their interference with medical treatment. Id. ¶¶ 13-17, 25-28. Third, he alleges that he has been in "solitary confinement" for twenty months with the lights on all night, and without "proper hygiene, food and adequate footwear." Id. ¶¶ 19, 29-31.

Regarding his court clothes, Plaintiff alleges that, in September 2018, he was given notice that his court clothes were to be destroyed. He argued, pointing out to a correctional officer that he had more court appearances and would need them. Id. ¶ 9. He was given three bookings for the single offense of arguing; RIDOC's failure to drop two of the charges and proceed on one only was a violation of RIDOC policy. Id. ¶¶ 9-10. The resulting discipline involved the loss of good-time credit. Id. ¶ 10, 23. After he was sanctioned and appealed, the time for destruction of the clothes was extended, but the discipline based on the three bookings was not altered. Id. ¶ 11. The clothes were subsequently destroyed, and the good-time credit was not restored. Id. ¶ 21.

The allegations regarding Plaintiff's fight with another inmate are somewhat confusing. With no explanation how or why, Plaintiff alleges that one of the Defendants who became "knowledgeable of a possible altercation failed to prevent it." ECF No. 24 ¶ 25. After the fight began, RIDOC officials used "riot spray" instead of "pepper spray" to stop it. Id. ¶ 26. One officer instructed another to "juice him," "to punish Plaintiff while he was incapacitated." Id. ¶ 27. After the fight was over and a nurse was on the scene to assist Plaintiff, one RIDOC official interfered with medical care by preventing the use of a rescue inhaler and bandages and ordered Plaintiff's hair to be cut. Id. ¶¶ 15, 28.

Plaintiff's claim regarding solitary confinement is based on the allegation that "for the past twenty (20) month Defendant Warden Aceto has kept the Plaintiff in solitary confinement." Id. ¶ 19. The SAC does not explain why, including whether Plaintiff was in disciplinary confinement for a defined term, perhaps because of the fight, whether he was being held apart from the general population of the ACI, perhaps to protect him from enemies, or whether he had been transferred to a higher security facility. During this confinement, Plaintiff alleges that the lights were kept on during the night. Id. ¶ 13. He also vaguely complains that "proper hygiene" and "adequate footwear" were not provided and his meal portions were shorted. Id. ¶ 29.

Plaintiff alleges that these events violated his rights under the Eighth Amendment of the Constitution in that they amounted to "cruel and unusual punishment." He asks the Court for injunctive relief, as well as for compensatory and punitive damages.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the

3

elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  A complaint must give the defendant fair notice of what the claim is and the grounds on which it rests and must allege a plausible entitlement to relief.  Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555, 559.

The plausibility inquiry requires the court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012).  This two-pronged approach begins by identifying and disregarding statements in the complaint that merely offer "'legal conclusion[s] couched as . . . fact[ ]'" or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 1949-50 (quoting Twombly, 550 U.S. at 555).  A plaintiff is not entitled to "proceed perforce" by virtue of allegations that merely parrot the elements of the cause of action.  Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  The task of dividing "the plausible sheep from the meritless goats" is accomplished through careful, context-sensitive scrutiny of a complaint's allegations.  Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425 (2014).  The Court must then determine whether the factual allegations are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678).  In considering a motion to dismiss a prisoner's claim that his constitutional rights have been violated, the court must be guided by the principle that "prison officials are to be accorded substantial deference in the way they run their prisons.  Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 40 (1st Cir. 2007).  Nevertheless, this does not mean that courts may rubber stamp or mechanically accept the judgments of prison administrators.  Id.

The Court has liberally reviewed Plaintiff's allegations and legal claims since they have been put forth by a *pro se* litigant. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## III. LAW AND ANALYSIS

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Staples v. Gerry, 923 F.3d 7, 13 (1st Cir. 2019) (quoting Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009)). To prevail on the objective prong, the claimant must show that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992). The subjective prong turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Staples, 923 F.3d at 13; see Moore v. Weeden, C.A. No. 09-434M, 2012 WL 733837, at *7 (D.R.I. Mar. 6, 2012) (to show use of excessive force, prisoner must show that that he suffered through "unnecessary and wanton infliction of pain"). Mindful of this standard, I find that Plaintiff's pleading stumbles on Iqbal's mandate that a complaint cannot rest on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678.

Starting with the allegations about the clothes, the pleading states that Plaintiff was given notice of the plan to destroy his court clothes and was afforded an opportunity to appeal the decision, during which the destruction was delayed. Only afterwards were the clothes actually destroyed. This sequence is simply not close to constituting an "extreme deprivation[] beyond the bounds of human decency," which is the foundation of an Eighth Amendment violation. Parker v. Wall, C.A. No. 10-040 ML, 2010 WL 4455818, at *2 (D.R.I. Oct. 6, 2010) (quoting Hudson, 503 U.S. at 8-9), adopted, No. 10-040 ML, 2010 WL 4455677 (D.R.I. Oct. 29, 2010).

As laid out in Plaintiff's pleading, the SAC's allegations regarding the clothes describe circumstances that are neither objectively inhumane nor that have any indicia permitting the inference that officials acted subjectively to cause harm. Rather, it appears that RIDOC established and followed appropriate procedures to make a decision with which Plaintiff disagrees. These facts fail to state a claim.

Plaintiff's allegations about the discipline imposed after he argued with a correctional officer about the clothes are also insufficient to rise to the level of a constitutional deprivation. The factual foundation for the claim is that he was charged with three bookings for one incident, which transgresses RIDOC policy. That may well be true, but a breach of RIDOC policy, without more, is not necessarily a violation of the Constitution, particularly not a violation of the Eighth Amendment. Also insufficient is the allegation that the discipline imposed deprived Plaintiff of good-time credit. It is well settled that such a loss fails to state a constitutional claim. Goddard v. Oden, No. CA 15-055 ML, 2015 WL 1424363, at *3 (D.R.I. Mar. 27, 2015) ("The cases interpreting Rhode Island's good time credit statute make clear that Plaintiff's complaint of loss of good time credit fails to state a claim, in that this consequence cannot amount to the loss of a liberty interest as a matter of law.").

Plaintiff's allegations about the fall-out from the fight also do not fare well. The Court's analysis must begin by focusing on the reality that the anchoring incident is an altercation involving Plaintiff and another inmate and RIDOC's effort to stop it and keep both inmates and staff safe from imminent harm. This is the precise circumstance where the Court should afford deference to the split-second decisions prison officials must make when dealing with such an emergency. See Graham v. Curry, No. 07-CV-247-PB, 2009 WL 3756940, at *4 (D.N.H. Nov. 9, 2009) ("The Supreme Court has made it clear that courts must give 'wide-ranging deference'

to the judgments that correctional officers make concerning matters of institutional security.") (citing Bell v. Wolfish, 441 U.S. 520, 547 (1979)); Spratt, 482 F.3d at 40 ("prison officials are to be accorded substantial deference in the way they run their prisons"). Each of Plaintiff's complaints about what was done lack articulated facts sufficient to render them plausible as Eighth Amendment transgressions.

For starters, the SAC tells the Court nothing about how or why RIDOC may be held responsible for the fight in the first place. See Robinson v. Wall, C.A. No. 09-277 S, 2015 WL 728508, at *7 (D.R.I. Feb. 19, 2015) (with no specific allegations sufficient to permit inference that warden was responsible for assault, claim fails to state a claim). The SAC supplies no facts regarding why the type of spray used to stop the incident was so much more dangerous than another type of spray as to be inhumane. The SAC does not provide any factual details surrounding the order to "juice him" to support the conclusory allegation that it happened after Plaintiff was clearly incapacitated; as stated, this allegation is so "threadbare" as to be insufficient to permit the conclusion that this directive was punitive or reflective of deliberate indifference. The SAC includes the detail that a nurse was brought in to treat Plaintiff after the incident ended, rendering it implausible that RIDOC deprived Plaintiff of medical treatment; yet the SAC has no facts to buttress the conclusory allegation that a RIDOC official interfered with the nurse's use of an inhaler and bandages. As alleged, this too is not sufficiently plausible to allege an Eighth Amendment violation. And, last, the SAC does not explain why Plaintiff's hair was cut, including whether it was because the spray got into it while RIDOC officials were stopping the fight. Without more, an unsatisfactory haircut does not transgress the Eighth Amendment. See Hannah Belitz, A Right Without A Remedy: Sexual Abuse in Prison and the Prison Litigation Reform Act, 53 Harv. C.R.-C.L. L. Rev. 291, 327 (2018) (suits alleging injuries

7

like defective haircut deemed frivolous). I find that the fight allegations fail to state a claim because they are conclusory and lacking in plausibility.

The last set of allegations relate to Plaintiff's claim that he was in solitary confinement for twenty months. Such facts may support a claim based on the principle that prisoners held in segregation have liberty interests protected by the Due Process Clause of the Fourteenth Amendment to the extent that the close confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Sandin held that a prisoner's thirty-day disciplinary segregation did not "present a dramatic departure from the basic conditions of [his] indeterminate sentence." Id. at 485. In so holding, the Supreme Court noted that the prisoner's "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates" in non-disciplinary settings such as administrative segregation and protective custody. Id. at 486. And in Wilkinson v. Austin, 545 U.S. 209 (2005), the Court held that placement in a maximum security facility where inmates were held in isolation with almost no human contact and with lights on around the clock for "indefinite" periods with limited opportunity for review triggered a liberty interest in avoiding that assignment. Id. at 213, 223-24. Such conditions for an indefinite period "impose[d] an atypical and significant hardship within the correctional context." Id. at 224.

Sandin and Wilkinson establish that an extreme length of disciplinary confinement can be a significant factor in implicating a liberty interest where the conditions do not "mirror" the conditions found in non-disciplinary settings such as administrative segregation and that of the general population. DuPonte v. Wall, 288 F. Supp. 3d 504, 509-10 (D.R.I. 2018). On the other hand, it is also clear that an inmate does not have a due process right to remain in the general population. See Meachum v. Fano, 427 U.S. 215, 225 (1976). This is because "[l]awful

incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Goddard, 2015 WL 1424363, at *2 (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)). "Principles of due process, however, will not be implicated unless the punishment in segregation causes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Akinrinola v. Wall, C.A. No. 16-370-M-LDA, 2016 WL 6462203, at *2 (D.R.I. Oct. 31, 2016). Rather, to state a claim in this arena, a pleading must clearly lay out facts sufficient to permit the inference that the claimant endured conditions that imposed "atypical and significant hardship." See Botelho v. Coyne-Fague, No. CV 19-00541-WES, 2019 WL 6117725, at *2 (D.R.I. Nov. 15, 2019) (allegations that claimant "placed in isolation seg with no AC" and "'in-human' [sic] conditions" too vague to state a claim); Cruz v. Wall, No. C.A. 09-523ML, 2010 WL 900517, at *1 (D.R.I. Mar. 12, 2010) (claims that food was nutritionally inadequate and stored in unsanitary conditions and that ventilation system was inadequate too vague to state a claim). Without factual allegations to buttress the claim of a constitutional deprivation, "[d]isciplinary segregation, even for periods as long as twenty six months, does not constitute cruel and unusual punishment." Paye v. Wall, C.A. No. 17-193 WES, 2018 WL 4639119, at *3 (D.R.I. Sept. 27, 2018) (alteration in original) (quoting Harris v. Perry, No. 15-222-ML, 2015 WL 4879042, at *5 (D.R.I. July 15, 2015)).

When the SAC is read with this guidance in mind, it is clear that Plaintiff's allegations – so far – lack the facts necessary to nudge his claim based on "solitary confinement" "across the line from conceivable to plausible." See Iqbal, 556 U.S. at 680. Whether he will be able to cure this deficiency remains to be seen.

## IV. CONCLUSION

Based on the foregoing, I recommend that Defendants' motions to dismiss (ECF Nos. 47, 53) be granted, but that Plaintiff be afforded leave to amend within thirty days of the Court's adoption of my report and recommendation. See 28 U.S.C. §§ 1915(e)(2), 1915A. If Plaintiff opts not to file an amended complaint within that time period, or if his third amended complaint fails to cure the deficiencies identified above, I recommend that the case be dismissed for failure to state a claim.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 9, 2019